IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

ROBERT G. DEVORE, SR.,       )    CIVIL ACTION 4:04-1546-CMC-TER
                         )
       Plaintiff,       )
                         )
       v.            )
                         )    <u>REPORT AND RECOMMENDATION</u>
JO ANNE B. BARNHART     )
COMMISSIONER OF SOCIAL    )
SECURITY,               )
                         )
       Defendant.    )
_____)

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The claimant, Robert G. Devore, Sr., filed applications for DIB on April 8, 2002 (Tr. 105-107), and SSI on April 8, 2002 (Tr. 621-623),[1] alleging disability since January 14, 2002 (Tr. 105-

_____

[1]Plaintiff filed previous applications for DIB and SSI on May 29, 2001, which were denied by the State agency and the Social Security Administration on initial consideration (Tr. 76,79-84,102-104,617-620). Thereafter, plaintiff did not further pursue his administrative

107, 621-623), due to back pain, depression, cervical spine fusion, nerve damage to left arm and shoulder, and stiffness and pain in the hip (Tr. 16). His applications were denied initially and upon reconsideration. (Tr. 77-78, 85-90, 96-98, 626-630). Following a hearing on December 3, 2003 (Tr. 30-75), the Administrative Law Judge (ALJ), John Randolph Martin, found, in a decision dated December 16, 2003, that plaintiff was not disabled because he had the residual functional capacity (RFC) to perform a range of light work, restricted to preclude more than occasional climbing, balancing, stooping, kneeling, crouching or crawling (Tr. 12-24). As the Appeals Council denied plaintiff's subsequent request for review of the hearing decision on April 2, 2004 (Tr. 7-9), the ALJ's decision was the Commissioner's "final decision" for purposes of judicial review.

## II. FACTUAL BACKGROUND

The plaintiff, Robert G. Devore, Sr., was born on October 11, 1963, (Tr. 105) and was 40 years of age on the date of Commissioner's final decision. He has the equivalent of a twelfth-grade education (Tr. 129), and past work experience as a truck driver (Tr. 129, 136).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

    (1)    The ALJ erred in his findings that the plaintiff's medically determinable impairments do not individually or combine to

---

remedies. Therefore, the decision on these prior applications became the final decision and is not now before the Court. The Court has no jurisdiction to review the action of the Commissioner on this earlier claim. See Califano v. Sanders, 430 U.S. 99, 107-108 (1977). Additionally, plaintiff's alleged onset date in this case/application is January 14, 2002, which is well beyond the denial of the previous application on August 10, 2001.

meet one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(2)     The ALJ erred in finding that the plaintiff's allegations regarding his limitations were not totally credible.

(Plaintiff's brief).

In the decision of December 3, 2003, the ALJ found the following:

1.     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7.     The claimant has the residual functional capacity to perform a range of light work, restricted to preclude more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling, to work other than unskilled work not involving complex or detailed work instructions and not requiring more than occasional contact with co-workers or the general public.

8.     The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965)

9.      The claimant is a "younger individual between the ages of 18 44" (20 CFR §§ 404.1563 and 416.963).

10.     The claimant has "high school equivalency certificate" (20 CFR §§ 404.1564 and 416.964).

11.     The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

12.     The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 416.967).

13.     Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a canning sorter (1,800 such jobs in South Carolina and 126,000 in the United States); and agricultural sorter (2,400 such jobs in the state and 168,000 in the national economy).

14.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. 23-24).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[2] and (2) whether the legal conclusions of the Commissioner are correct under controlling

---

[2]Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

-4-

law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d

802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept

as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally

equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739

F.2d 987, 989 (4th Cir. 1984).  The Court's scope of review is specific and narrow.  It does not

conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be

upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C.

§ 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five

questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§

404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an

impairment which equals a condition contained within the Social Security Administration's official

listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent

him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by

the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock,

483 F.2d at 775.

-5-

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

Plaintiff has a history of undergoing a cervical diskectomy with fusion on May 26, 1998, by William M. Rambo, Jr., M.D. (Tr. 200-204).

On November 30, 1998, William M. Rambo, Jr., M.D. had to re-do plaintiff's anterior cervical diskectomy and fusion for reoccurring pain (Tr. 263-267).

On January 14, 2002, plaintiff was seen in the emergency room complaining of low flank pain bilaterally.  Plaintiff reported he took prescription nonsteroidal anti-inflammatory medication.  Examination revealed the absence of lower lumbar discomfort to touch and the absence of extremity edema (Tr. 481-483).

On January 17, 2002, plaintiff was examined at Lexington Medical Center for complaints of back, flank, groin, and abdominal pain.  Plaintiff reported he took prescription and non-prescription nonsteroidal anti-inflammatory medication, which was somewhat effective.  Examination revealed low back paraspinous muscle tenderness, but also that plaintiff was alert and oriented and demonstrated intact insight, intact memory for past and recent events, and full lower extremity ranges of motion bilaterally.  Lumbar spine x-rays were normal and an abdominal computerized tomography scan revealed a nonobstructing small right kidney stone.  Plaintiff was treated with medication (Tr. 477-479).

On January 31, 2002, plaintiff was examined at Lexington Medical Center for complaints of lower back and left hip pain. Examination revealed left lower lumbosacral discomfort subjectively, but also the absence of back tenderness, normal straight leg raise testing, normal lower extremity muscle strength, normal lower extremity deep tendon reflexes, and normal gait.  Medication was prescribed for plaintiff.  It was noted plaintiff did not receive "anything" (presumably medication) during his examination, and that he slept soundly during his stay.  Questionable compliance was also

-7-

noted because plaintiff had not followed previous recommendations to followup with treating physicians (Tr. 473-475).

Plaintiff was examined on February 4, 2002 by Kaushal K. Sinha, M.D., for complaints of back and bilateral leg pain. Examination revealed the absence of spine deformity, the ability to heel/toe walk, normal lower extremity deep tendon reflexes, normal sensory functioning, and questionable lower left extremity muscle weakness without calf or thigh muscle wasting (Tr. 452).

On February 25, 2002, plaintiff was examined at Lexington Medical Center for complaints of lower back and left leg pain. Plaintiff denied lower extremity weakness or numbness. Examination revealed lower lumbar sacral discomfort, but also the absence of back tenderness, normal straight leg raise testing, normal deep tendon reflexes, normal gait, normal neurological functioning, and the absence of signs of cord compression. Plaintiff was treated with medication (Tr. 470-471).

Records from Lexington County Mental Health Center between April 25, 2002, and May 27, 2002, revealed treatment with medication for depression. During this period, examinations revealed a flat affect and a depressed, anxious mood, but also that plaintiff was alert, oriented to person, place/time, and situation, well groomed, and appropriately dressed and that he demonstrated calm motor activity and normal speech. Plaintiff reported he drove an automobile and attended movies (Tr. 453-460). Plaintiff denied suicidal ideation (Tr. 590).

On June 25, 2002, plaintiff was examined by Deanna S. McNeil, M.D., a consultative psychiatrist. Plaintiff reported a history of depression exacerbated by psychosocial stressors, work-related injuries and resultant chronic pain, and a pending worker's compensation claim. He also reported he took nonprescription sleep aids and nonsteroidal antiinflammatory medication. He

further reported he cared for his own personal needs and performed "small" household activities with difficulty and that he had driven himself to the appointment.  He additionally reported undergoing no current ongoing mental health treatment.  He also reported he had attempted to maintain employment, but had been repeatedly  informed he represented a worker's compensation risk, and thus, had not been given further opportunities for employment.  Examination revealed plaintiff reported a depressed mood and demonstrated an affect congruent therewith, and intermittent episodes of  hallucinations in hearing someone call his name but that he was oriented in all spheres and demonstrated appropriate grooming, the absence of increased psychomotor activity, the absence of communication difficulty, linear and goal-oriented thought processes, and the ability to concentrate.  Dr. McNeil diagnosed major depressive disorder, and histories of chronic pain syndrome, lower back pain, kidney stones, primary support system difficulties, economic problems, housing problems, and problems with access to care, and concluded that plaintiff was able to concentrate well enough to perform simple tasks (Tr. 461-464).

On July 2, 2002, Edward D. Waller, Ph.D., a State agency clinical psychologist, determined plaintiff had no significant limitations in his abilities to remember locations and work-like procedures, understand, remember, and carry out short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond approximately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and that he had moderate limitations in his abilities to

-9-

understand, remember, and carry out detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes  (Tr. 534-536).

On July 26, 2002, plaintiff was examined in the ER of Lexington Medical Center for complaints of neck, left shoulder, and left elbow following a motor vehicle in which he was the driver.  Plaintiff reported the ability to ambulate and the absence of weakness or paresthesia.  He also reported he took no medications.  Examination revealed plaintiff was alert and oriented in three spheres and that he demonstrated only mild bilateral neck and left trapezius tenderness, only mild lumbar paravertebral tenderness, only mild left elbow tenderness without deformity, full left elbow ranges of motion, and the absence of neurological deficits.  Left elbow x-rays were normal, and cervical spine x-rays revealed a previous disc fusion but the absence of acute injury (Tr. 465-467).

On August 12, 2002, plaintiff was examined by William L. Lehman, Jr., M.D., an orthopedist.  Plaintiff reported lower extremity weakness, throbbing, and burning, and depression. He also reported he took no medication.  Examination revealed a flat affect; left arm numbness, left arm depressed reflexes, "some" left arm loss of grip, painful straight leg raise testing, and iliac spine tenderness, but also that plaintiff was alert and conversant, and that he demonstrated the absence of gross depression, the absence of low back spasm, tenderness, or deformity, only slightly abnormal reflexes, an only slightly antalgic gait, the ability to bend to mid calf, painful but unrestricted

-10-

extension, decreased but symmetrical rotation and tilt, the absence of gross lower extremity muscle weakness, and the absence of edema. Dr. Lehman diagnosed lumbosacral pain with bilateral lower extremity dysesthesias left greater than right, status post cervical fusion, and chronic depression by history. He concluded he found no evidence of upper motor lesion which would indicate a specific cervical problem that cold account for plaintiff's current symptomatology. He stated that plaintiff would be limited to sedentary activity but then stated that plaintiff was "disabled from any specific gainful employment at the present time." (Tr. 505-507).

In a statement dated October 23, 2002, plaintiff reported he cared for his own personal needs, performed limited household cleaning and other chores. He prepared simple meals, drove an automobile with effort, shopped with effort, and attended movies occasionally. He also reported that he took nonprescription sleep aid medication (Tr. 187-190).

On November 14, 2002, Kevin W. King, a State agency psychological consultant, concurred with Dr. Waller's July 2, 2002, mental residual functional capacity (RFC) assessment (Tr. 536).

On November 25, 2002, Robert D. Kukla, M.D., a State agency physician, determined plaintiff retained the physical RFC to lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds and perform left hand heavy gripping; and perform limited handling; and that he had no visual, communicative, or environmental limitations, or other manipulative limitations (Tr. 510-517).

Plaintiff was admitted to Palmetto Richland Memorial Hospital on January 21, 2003, and treated by Kailash Kumar Narayan, MD, for complaints of low back pain and lower extremity weakness, for which he took medication in the ER room. Examinations revealed normal extremity

muscle strength, only mildly abnormal strength on hip flexion, knee straightening, and dorsiflexion, possibly due to poor effort, normal plantar flexure, the absence of extremity drift, normal extremity reflexes bilaterally, normal extremity sensation, the absence of extremity deformities, and the absence of extremity edema.  Lumbar spine x-rays and a lumbar spine magnetic resonance imaging (MRI) were normal (Tr. 605-612).

Medical records from Columbia Area Mental Health, Columbia, South Carolina, from July 23, 2003, through August 1, 2003, revealed treatment with medication for depression.  During this period, examination revealed retarded motor activity, a depressed mood, a flat affect, distractibility, and "hear[ing] conversations [at] night," but also that plaintiff was oriented in four spheres, and that he demonstrated goal-directed thought processes, good memory, and good judgment.  Plaintiff denied abnormal thought content.  He also reported he drove an automobile (Tr. 564-583).

On October 27, 2003, plaintiff was examined for complaints of low back, hip, and thigh pain after falling off a porch while holding a child.  Plaintiff reported the ability to ambulate.  He also reported he took antidepressant medication.  Examination revealed ishium and right iliac crest tenderness, and right hip pain on rotation, but also the absence of thoracic spine tenderness, only mild lumbar spine tenderness, the absence of upper extremity tenderness over the pelvis, full hip and lower extremity ranges of motion bilaterally, and normal extremity muscle strength.  Right hip and a right leg x-ray were normal.  Plaintiff was treated with medication (Tr. 594-595).

On November 30, 2003, plaintiff was examined at Lexington Medical Center for complaints of right hip pain.  Plaintiff reported decreased sexual function since his fall. Examination revealed hip tenderness to palpation but also normal right lower extremity neurovascular functioning.  Right

hip x-rays revealed a healing right ischial ramus fracture and the absence of hip fracture (Tr. 599-601).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

Plaintiff first argues that the ALJ did not properly assess the effects of his impairments, specifically major depressive disorder and injuries to his back, spine, left arm and shoulder, and hip including the associated pain and loss of function. Plaintiff argues that the ALJ erred in finding that his medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.  Plaintiff asserts that if the ALJ had properly evaluated his impairments, he would have met several listings under 1.00 Musculoskeletal and 12.00 Mental Disorders. Plaintiff cites to medical records from February, April and June of 2000. These records are all dated before plaintiff's previous applications for DIB and SSI on May 29, 2001, which were denied by the State agency and the Social Security Administration on initial consideration. Further, the reports relied on by plaintiff are well before his alleged onset date of January 14, 2002. (*See* footnote 1).

Defendant contends plaintiff did not meet a Listing. Defendant argues that plaintiff did not demonstrate pseudoclaudication resulting in an inability to ambulate effectively as required by section 1.04C. Defendant contends plaintiff demonstrated normal gait (Tr. 470, 473), or an only slightly antalgic gait (Tr. 506); and the ability to heel/toe walk (Tr. 452); and he reported the ability to ambulate (Tr. 465, 594). Defendant argues that "his ability to ambulate allowed him to care for his own personal needs without assistance (Tr. 59, 61, 95, 187, 461, 463), perform household cleaning and other chores (Tr. 188, 461, 463), prepare simple meals (Tr. 57, 188), shop (Tr. 57, 189), attend movies (Tr. 189, 588), and possess a driver's license and an automobile, and drive (Tr. 20,

58-59, 190, 456, 463, 465-467, 575)." (Defendant's memorandum p. 13). Defendant discussed the medical records noting that examinations revealed absence of tenderness, low back deformity and back spasm with ability to bend, normal muscle strength, normal neurological functioning, etc. (See defendant's memorandum p. 14).

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and she must adequately explain her evaluation of the combined effects of those impairments. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989); Reichenbacher v. Heckler, 808 F.2d 309,312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423 (d)(2)(c) (1982), and a general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987).

In addition, the Secretary is required to analyze two issues. He must first consider the combined effects of a claimant's impairments, and then he must adequately explain his evaluation of the combined effect of those impairments. Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989), and Reichenbacher v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985). These factors are mandated by Congress' requirement that the Secretary consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(c) (1982), and general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence, Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). See also, Hines, supra. In the Hines case, the plaintiff was within a few pounds of meeting the listing for disability due to obesity. Yet the ALJ found that despite her obesity and several other impairments, she was not disabled. Without specifically finding disability, the Fourth

Circuit Court of Appeals remanded the case because the ALJ had failed to "explicitly indicate" the weight given to the evidence in the case, and the combination of the plaintiff's impairments.

The Social Security Administration has developed a lengthy list of impairments, "considered severe enough to prevent a person from doing any gainful activity." The list contains those impairments which preclude a person from engaging in **any** gainful activity, not merely substantial gainful activity. Sullivan v. Zebley, 493 US 521, (1990). Each Listed impairment has one or more components, and for each component, the Social Security administration has prescribed a certain degree of intensity which the agency considers sufficiently serious to disable a claimant. The plaintiff's impairment must satisfy all of the components of the Listing. If there is an exact match between the plaintiff's impairment and the Listing, the plaintiff is found disabled, without regard to vocational factors. If the impairment does not satisfy **every** component, then the impairment does not meet the Listing. Id. In addition, the plaintiff has to establish that his impairment, which met all of the criteria of the Listing, would last for twelve consecutive months. 20 CFR §§ 404.1505(a), 416.905(a). An impairment which improves to the point that the claimant is capable of returning to work in less than 12 months is not a disabling impairment, no matter how much it incapacitates the claimant during its most exacerbated phase.

A review of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 along with the medical evidence of record reveals that plaintiff did not meet the listing for Listing 1.04. Section 1.04 requires that the disorder result in *compromise of the nerve root or the spinal cord* with either (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or motor loss and, if there is involvement of the lower back, positive straight leg raising test; or (2) spinal arachnoiditis, confirmed by an

-15-

operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (3) lumbar spinal stenosis resulting in psuedoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in § 1.00(B)(2)(b).

The ALJ concluded the following in his decision with regards to this issue:

> The medical evidence indicates that the claimant has musculoskeletal impairments of the cervical and lumbar spines and major depressive disorder, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The claimant does not demonstrate nerve root compression or a combination of pain, limitation of motion, motor loss, sensory loss, and positive straight leg raising resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively, as required by Section 1.04 of the Listing of Impairments.

(Tr. 19).

In this case, plaintiff does not meet or equal § 1.04 because the record reveals that on January 14, 2002, examination revealed absence of lower lumbar discomfort to the touch; on January 17, 2002, examination revealed full lower extremity ranges of motion bilaterally, lumbar x-rays were normal (Tr. 478, 500); on January 31, 2002, examination revealed the absence of back tenderness, normal straight leg raise testing, normal lower extremity muscle strength, normal lower extremity deep tendon reflexes, and normal gait (Tr. 473); on February 4, 2002, examination revealed the absence of spine deformity, ability to heel/toe walk, normal lower extremity deep tendon reflexes, normal sensory functioning, and questionable lower left extremity muscle weakness; on February

25, 2002, plaintiff denied lower extremity weakness or numbness and examination revealed lower lumbar sacral discomfort, absence of back tenderness, normal straight leg raise testing, normal deep tendon reflexes, normal gait, normal neurological functioning, and absence of signs of cord compression (Tr. 470); on July 26, 2002, examination revealed only mild bilateral neck and left trapezius tenderness, only mild lumbar paravertebral tenderness, only mild left elbow tenderness without deformity (Tr. 465-466); on August 12, 2002, examination revealed left arm numbness, painful straight leg raise testing, but absence of low back spasm, tenderness, or deformity, only sightly abnormal reflexes, slightly antalgic gait, ability to bend to mid calf, painful but unrestricted extension, absence of gross lower extremity muscle weakness, and the absence of edema (Tr. 506); on January 21, 2003, examination revealed normal extremity muscle strength, only mildly abnormal strength on hip flexion, knee straightening, normal plantar flexure, absence of extremity drift, normal extremity reflexes bilaterally, normal extremity sensation, absence of extremity deformities with normal lumbar spine x-rays and MRI of the lumbar spine. (Tr. 605, 606, 613, 615); and, on October 27, 2003, examination revealed absence of thoracic spine tenderness, only mild lumbar spine tenderness, absence of upper extremity tenderness over the pelvis, full hip and lower extremity ranges of motion bilaterally, and normal extremity muscle strength with normal hip and right leg x-rays being normal (Tr. 594-595). Thus, plaintiff has failed to show that his impairment met the Listed 1.04(C) impairment for twelve consecutive months.

Plaintiff further argues that he met Listing 12.04 in that he "suffers from severe medically documented, persistent depression, including sleep disturbance, decreased energy, difficulty concentrating or thinking, and suicidal ideations." (Plaintiff's brief p. 2).

Defendant argues that while plaintiff experienced certain elements of depression to varying degrees, the record did not demonstrate he experienced any of the symptoms with the consistency, frequency, and significance indicative of a clinical pattern which satisfies the requirements of § 12.04, but rather, demonstrated the absence of gross depression, the absence of hallucinations or delusions, the absence of increased psychomotor activity and the ability to concentrate, and plaintiff's denials of suicidal ideation. Defendant argues as follows:

> Examinations consistently revealed plaintiff was alert (Tr. 454-455, 466, 478, 506, 589), oriented in three and four spheres (Tr. 454-455, 463, 466, 478, 580, 589), and conversant (Tr. 506), and that he demonstrated appropriate grooming (Tr. 455, 463, 589), appropriate dress (Tr. 454), the absence of gross depression (Tr. 506), linear and goal oriented thought processes (Tr. 455, 463, 580, 589), normal cognition (Tr. 455, 589), the absence of hallucinations or delusions (Tr. 455, 589), intact memory for past and recent events (Tr. 478, 580), intact or only mildly impaired judgment (Tr. 455, 580, 589), intact insight (Tr. 478), the absence of increased psychomotor activity (Tr. 463, 589), normal speech (Tr. 455, 589), the absence of communication difficulty (Tr. 463), the ability to concentrate (Tr. 463), and average intellectual functioning (Tr. 455, 589). Plaintiff denied suicidal ideation (Tr. 590), and abnormal thought content (Tr. 580). Again the ALJ's decision was supported by this lack of objective medical findings.

(Defendant's memorandum p. 21).

A review of Listing 12.04, Affective Disorders, reveals that it is characterized by a disturbance of mood accompanied by a full or partial manic or depressive syndrome.  The required level of severity for these disorders is met when the requirements in **both** A and B are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking;

OR

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractability; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

OR

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:
1.    Marked restriction of activities of daily living; or
2.    Marked difficulties in maintaining social functioning; or
3.    Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

> 4.   Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Therefore, in order to meet the requirements of Listing 12.04 (affective disorders), the plaintiff has to show not only that he had been diagnosed as having an affective disorder but also that he had at least two of the functional limitations as listed above in B. Based on the medical evidence, the ALJ's assessment is based on substantial evidence. The ALJ concluded the following in his hearing decision:

> The claimant's affective disorder results in no more than moderte restriction of his activities of daily living and no more than moderate difficulties in maintaining social functioning. The claimant demonstrates no more than moderate difficulties in maintaining concentration, persistence or pace. He has never experienced episodes of decompensation of extended duration. The evidence does not establish that the claimant has experienced repeated episodes of decompensation, each extended duration or an inability to function outside a high supportive living arrangement. There is no evidence that a minimal change in the claimant's environment would be likely to cause him to decompensate. These limitations do not meet or equal the requirements of Section 12.04 of the Listing of Impairments. The claimant does not meet or equal the cited sections or any other section of the Listing of Impairments.

(Tr. 19).

As the medical reports set out above reveal, plaintiff meets the requirements of Section A of 12.04. Therefore, it must be determined if there is objective evidence that plaintiff met Section B. Based on the Mental Residual functional Capacity Assessment completed by Dr. Waller (Tr. 534-535), Psychological consultant, and the Clinical Functional Assessment by Dr. McNeil (Tr. 463), plaintiff does not have  marked restrictions of activities of daily living; or marked difficulties in

maintaining social functioning. Further, there has been no evidence presented of episodes of decompensation of an extended duration. Thus, plaintiff has not met the requirements of Section B of 12.04. For a claimant to qualify for benefits by showing that her impairment meets or is equivalent to a listed impairment, she must present medical findings equal in severity to all the criteria for the listed impairment. Sullivan v. Zebley, 110 S.Ct. 885 (1990). Based on the medical records as set out above, the undersigned finds that there is substantial evidence to support the ALJ's decision that plaintiff did not meet Listing 12.04.

Plaintiff next argues that the ALJ did not properly assess his credibility and failed to give specific examples to support his finding in violation of SSR 96-7p. Plaintiff argues that the ALJ based his credibility determination in part on plaintiff's past drug use and inconsistencies in his admission of his drug use. Plaintiff argues that his disclosure of drug use does not make him less credible, it indicates plaintiff's extreme credibility.

Defendant contends that the ALJ properly considered plaintiff's subjective complaints and properly concluded that they were not credible. Defendant asserts that the ALJ found that plaintiff failed to take significant medication for pain regularly or took no medication at all. Defendant argues that plaintiff "was able to engage in significant daily activities, cared for his own personal needs (Tr. 59, 61, 95, 187, 461, 463), performed household cleaning and other chores (Tr. 188, 461, 463), prepared simple meals (Tr. 57, 188), shopped (Tr. 57, 189), attended movies (Tr. 189, 588) and, as the ALJ expressly noted in his decision, possessed a driver's license and an automobile, and drove." (Defendant's memorandum p. 16-17). Further, defendant argues that plaintiff's contention that he was unable to afford treatment is not persuasive because there is no indication "that plaintiff was denied medical treatment by any medical facility, or that he actually sought low or no-cost ongoing

-21-

treatment by any institution. Indeed, the record indicated primary private insurance coverage in February 2002 (Tr. 469), and that, after a discussion between plaintiff and a physician regarding plaintiff's lack of insurance coverage in August 2003(tr. 608), plaintiff was assessed (Tr. 605-607) and provided with information regarding 'Community Partners Healthcare Access,' which included a map, addresses, and phone numbers of ten Community Care Centers which could see him on a primary basis to evaluate his back pain." (Tr. 607).

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996); <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ cited numerous reasons for finding that plaintiff's credibility was not without question. For instance, the ALJ concluded that:

> The evidence as to the claimant's condition, activities, and capabilities is not consistent with the degree of disabling impairment he asserted. As discussed above, the claimant has given rather inconsistent information concerning his impairments, including their origin, to the providers treating him. The evidence shows long

-22-

periods when he did not seek treatment for his physical or mental impairments. He has also demonstrated a pattern of not following treatment recommendations of physicians when he did seek treatment. He acknowledged that he has a driver's license and continues to drive, including driving himself to the hearing. There have been few clinical findings to support the degree of pain he asserted. In considering the claimant's credibility, it is also important to consider his acknowledged history of drug abuse. He has abused multiple drugs over time, but continued to use marijuana as a form of self-medication until at least June 2003. The inconsistent information he has given to his medical providers concerning that abuse also diminishes his credibility. After careful review of all the evidence, the testimony of the claimant as to pain and other subjective symptoms is not found to be credible to establish impairment of the disabling severity alleged.

(Tr. 20).

The court has addressed the issue and standard of pain as follows:

'An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . . . there must be medical signs and findings, established by medically acceptable, clinical or laboratory techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability.'

Foster v. Heckler, 780 F.2d. 1125, 1128-29, (4th Cir. 1986) (quoting from the Social Security

Reform Act of 1984). See also, SSR 90-1p and Hyatt v. Heckler, 807 F.2d 379 (4th Cir. 1986).

There is substantial evidence to support the ALJ's decision as to plaintiff's allegations of pain

and the determination of his credibility. There was a lack of objective medical evidence supporting

plaintiff's claims as to the extent of functional limitations due to his pain and depression. The ALJ's

evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the

Commissioner's regulations.   The ALJ adequately addressed each complaint, as discussed, and

explained his evaluation. Therefore, the undersigned concludes that there is substantial evidence to

-23-

support the ALJ's determination as to plaintiff's complaints of pain and his credibility based on the objective medical evidence. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude him from the demands of work.

## VI. CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

Respectfully submitted,

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 11, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

-24-

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The Serious Consequences of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 USC § 636 and Fed. R. Civ P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.,</u> 142 F.R.D. 91, 94 & n.3, 1992 U.S. Dist. LEXIS ® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber,</u> 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski,</u> 816 F. Supp. 408, 410, 1993 U.S. Dist. LEXIS ® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter,</u> a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made and the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce,</u> 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied,* <u>Schronce v. United States,</u> 467 U.S. 1208 (1984); and <u>Wright v. Collins,</u> 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS,</u> 932 F.2d 505, 508-509, 1991 U.S. App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin,</u> 761 F.2d 179, 180 n. 1 (4th Cir.) (party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied,* 474 U.S. 1009 (1985). In <u>Howard,</u> *supra,* the court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner,</u> 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating that 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* <u>Branch v. Martin,</u> 886 F.2d 1043, 1046, 1989 U.S. App. LEXIS® 15,084 (8th Cir. 1989) ("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark,</u> 749 F.2d 5, 7 n. 1 (3rd Cir. 1984) ("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* <u>Wright v. Collins,</u> *supra;* and <u>Small v. Secretary of HHS,</u> 892 F.2d 15, 16, 1989 U.S. App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina    29503**